IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT A. JOHNSON, | : | No. 4:06-CV-1031 |
| | : | |
| Plaintiff, | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**August 10, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On May 31, 2007, Magistrate Judge Thomas M. Blewitt ("Magistrate Judge Blewitt" or "the Magistrate Judge") filed a Report and Recommendation ("Report") reviewing the appeal of the Commissioner's decision to deny Plaintiff Scott A. Johnson's ("Plaintiff" or "Claimant") claims for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), which were filed under Titles II and XVI of the Social Security Act ("the Act"). See 42

---

[1] Michael J. Astrue became the Acting Commissioner of Social Security, effective February 12, 2007 to succeed Linda S. McMahon. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action.

U.S.C. §§ 401-433, 1381-1383f.  (Rec. Doc. 13).  Magistrate Judge Blewitt recommended that the appeal be denied.

On June 18, 2007, Plaintiff filed Objections to the Magistrate Judge's Report.  (Rec. Doc. 14).  On June 27, 2007, the Commissioner filed a Response opposing Plaintiff's Objections.  (Rec. Doc. 15).  Thus, this matter is now ripe for our review.

**PROCEDURAL HISTORY:**

Plaintiff filed the instant application for DIB and SSI on November 19, 2003, alleging an inability to work since July 1, 2001.[2]  In his application, Plaintiff attributes his alleged inability to work to cervical and lumbar degenerative disease, obesity, diabetes mellitus, status-post hernia surgery, and gastroesophogeal reflux disease/gastritis.  His claim was denied initially, prompting Plaintiff to timely file a request for hearing.  Said request was granted, and on August 8, 2005, a hearing was held before an Administrative Law Judge ("ALJ"), during which Plaintiff and

---

[2] Plaintiff filed three (3) prior applications for SSI: in September 1985, September 1999, and October 2002.  Denials of all three (3) applications are final.

Notably, Plaintiff's October 2002 application alleged a disability date of July 1, 2001, the same disability date alleged here, and the October 2002 application was denied in July 2003.  As the denials of all prior applications, including that filed in October 2002, are final, we agree with the Magistrate Judge's determination that consideration of whether Plaintiff was disabled prior to July 2003 to be barred by the doctrine of res judicata.  See Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999) (noting that "[r]es judicata principles apply to administrative as well as judicial adjudications." (citation omitted)).  Thus, the time period at issue here is November 19, 2003 (date of the filing of the instant application) through October 17, 2005 (date of the Administrative Law Judge's ("ALJ") decision).

vocational expert Gerald Keating ("VE" or "VE Keating") testified. On October 17, 2005, the ALJ issued a decision denying Plaintiff's claims.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council, which was denied on March 23, 2006, making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), Plaintiff then appealed the Commissioner's final decision by filing his Complaint with this Court on May 22, 2006. (Rec. Doc. 1). Therein, Plaintiff contends that "[t]he decision of the Defendant denying the Plaintiff Disability benefits is . . . erroneous and contrary to settled law," and seeks reversal of that decision. See id. at 3-4.

**STANDARDS OF REVIEW**:

**A.   Review of Magistrate Judge's Report**

When objections are filed to a report of a magistrate judge, we make a de novo determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. § 636(b)(1); Local Rule 72.3l. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. See id. Indeed, in providing for a de novo review determination rather than a de novo hearing, Congress intended to

permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

### B.     Review of the Denial of Disability Benefits

When reviewing the denial of disability benefits, the Court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### C. Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a claimant is not disabled at any point in the five-step sequential process, the review does not proceed. 20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Step two is an evaluation of whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). At step three, the Commissioner must then determine whether the claimant's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d).

If the Commissioner determines that the claimant's impairment does not meet or equal a listed impairment, the Commissioner must continue with the

sequential evaluation process and consider whether the claimant has established that he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Plummer, 186 F.3d at 428. If the claimant is able to demonstrate this, then the burden of proceeding shifts to the Commissioner, at step five, to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The Commissioner is also to consider the claimant's stated vocational factors.

**FACTUAL BACKGROUND**:

General Information

At the time of his hearing before the ALJ, Plaintiff was a forty-seven (47) year old, literate individual who had earned his General Equivalency Diploma. (TR. 15, 48, 439). He stood five (5) feet, eight and a half (8.5) inches tall and weighed two hundred and eighteen (218) pounds. (TR. 437). His prior work experience was extensive, and it included service in the United States military and employment as a stone laborer, a store clerk/stocker, a furniture delivery drive, and a cook. (TR. 15, 20, 48).

Plaintiff's Testimony

Plaintiff first testified that he has diabetes. (TR. 440). He indicated that despite efforts to control the condition, such as managing his diet, testing his blood sugar daily, and taking the prescription medication Metformin, his blood sugar levels are still higher than his doctor would like.[3] Id.

Next, Plaintiff testified that he has degenerative disc disease and degenerative joint disease in his lower back, conditions apparently diagnosed following MRIs of his back two (2) years prior to the hearing, and neuroforaminal stenosis in his neck. (TR. 442). Plaintiff indicated that as his back and neck problems can cause severe pain, he attempts to avoid aggravation of the conditions by restricting his movement, such as not lifting more than six (6) or seven (7) to ten (10) pounds, not bending at the waist, and not sitting for longer than one (1) hour at a time. (TR. 322, 443-46). Plaintiff indicated that said restrictions were recommended by his primary care doctor, Dr. Black. (TR. 445-46). To reduce his pain, Plaintiff also takes two narcotics, Oxycontin and Soma,[4] which is a muscle

---

[3] Plaintiff also testified that diabetes puts him at a higher risk for developing cancer. (TR. 457).

[4] Plaintiff reported that the side effects of Oxycontin include "the sweats," "itching," and feeling as if he needs to lay down. (TR. 439, 449). He also reported that Soma causes him to feel as if he has "a beer buzz." (TR. 451).
However, Plaintiff further indicated that he minimizes the impact of these side effects on his daily activities by strategically timing and/or skipping certain doses. (TR. 449-51).

relaxer.[5]  (TR. 446-47).

Plaintiff then testified about other medical problems that he experiences. Such problems include intestinal issues, such as burning sensations when eating that are apparently due to bacteria in his intestines. (TR. 455-57). Efforts to control these issues include taking prescription medications: first, Skelaxin, which was discontinued because it "ate a hole in [his] belly" (TR. 455-56), and later, Nexium (TR. 447-48). Finally, Plaintiff indicated that he takes Flomax for prostate problems and that he needs a "redo" of a previous hernia surgery. (TR. 447-48, 458-59).

However, Plaintiff testified that despite all of the aforesaid medical conditions and the ramifications thereof, he cares for his three (3) mobile children, ages three (3) years, two (2) years, and nine (9) months at the time of the hearing, on an apparently daily basis while his wife works. (TR. 439, 449). Noting that watching these three (3) children, whom Plaintiff described as "a handful," is "not easy," Plaintiff nevertheless contended that he can manage all of the things he has to do for them.[6] (TR. 449, 451). Notably, such tasks included lifting his youngest

---

[5] Plaintiff also noted that in the past, he underwent physical therapy, pain management, and injections for his pain. (TR. 469).

[6] Plaintiff characterized changing the diapers of his daughter as "[a]bout the only stressful thing," made difficult by the fact that he has to reach forward. (TR. 452).

child, who weighed eighteen (18) pounds at the time of the hearing, into her car seat. (TR. 452, 455).

Plaintiff also indicated that apparently because he is at home with the children, he prepares the meals for his family[7] and tries "to pick up the house a little bit." (TR. 453-54). Moreover, Plaintiff testified that he can drive thirty-five (35) minutes without stopping, and that he can ride as a passenger for about one (1) hour. (Tr. 465-66).

Finally, Plaintiff testified that during the time period at issue, he was unemployed, with the exception of a short, unsuccessful attempt to work in a stone quarry, which required "bending over, picking up the heavy rock, putting them on the pallet." (TR. 465). However, Plaintiff also indicated that he thought he could handle a job that accommodated the restrictions on his activities that the ALJ found credible. (TR. 462-64).

Medical Evidence

Although no medical experts testified during Plaintiff's hearing, there is extensive medical evidence in the record. Such evidence includes voluminous medical records and/or letters from physicians, only some of which relate to

---

[7] Plaintiff also indicated that although he no longer typically does the dishes, when he does them, he finishes them as quickly as possible to minimize his pain. (TR. 464).

Plaintiff's condition during the time period at issue here. A large number, but not all, of the relevant records originate from the office of Dr. Black. Said records include objective results of medical inquiries, which confirm that during the relevant period, Plaintiff experienced cervical and lumbar degenerative disc disease, obesity, diabetes mellitus, status-post hernia surgery, and gastroesophogeal reflux disease/gastritis impairments. However, Dr. Black's records also include his conclusions as to the extent of Plaintiff's disability and his eligibility for SSI: Plaintiff is indefinitely disabled and should receive SSI. (TR. 352).

### Vocational Expert Testimony

VE Keating testified that a hypothetical claimant similar to Plaintiff (the same age with the same education and heavy work history), who was experiencing the same medical conditions (had a hernia surgery, and was being treated for cervical and lumbar pain, as well as stomach problems) and was under the same restrictions (no bending, no lifting over ten (10) pounds, no turning his head from side to side, and no forceful pushing or pulling), was capable of sedentary work if a sit/stand option were available. (TR. 472-73). VE Keating indicated that such sedentary work could include working as a general cashier, assembler, or inspector. (TR. 473). However, VE Keating also testified that a hypothetical claimant who

met the description of Plaintiff, as Plaintiff described himself, could not perform those jobs. (TR. 474).

### ALJ's Determination

After engaging in the five-step evaluation process required by the Act, the ALJ found Plaintiff not to be disabled at any time relevant hereto. The ALJ's conclusions as to each of the five (5) steps follow. First, he determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. Id. However, the ALJ then found that although Plaintiff has severe impairments ("cervical and lumbar degenerative disc disease, obesity, diabetes mellitus, status-post hernia surgery, and gastroesophogeal disease/gastritis"), said impairments do not meet or equal any listed impairments. Id. This finding was based, in part, on the ALJ's finding that Plaintiff's testimony with regard to "his limitations [is] not totally credible . . . ." Id. Next, the ALJ determined that although Plaintiff is not able to perform his past relevant work, Plaintiff's medical impairments do not prevent him from performing a variety of jobs that involve sedentary work. Id.

## DISCUSSION:

In this appeal, Plaintiff contends that: 1) "the ALJ failed to consider the primary treating physician reports and medical evaluation of Dr. Black who

explictely [sic] found the Plaintiff disabled;" 2) "the ALJ failed to present a hypothetical question to the vocational expert that identified all of the Plaintiff's impairments and limitations;" and 3) "the ALJ failed to consider the work history of the Plaintiff."  (Rec. Doc. 11 at 7 (emphasis omitted)).

In his Report, Magistrate Judge Blewitt reviewed Plaintiff's contentions that the ALJ erred in all of the aforementioned ways and concluded that the ALJ had not so erred.  (See Rec. Doc. 13).  Plaintiff objects to one (1) portion of the Magistrate Judge's Report, arguing that "the Magistrate Judge was in error when he failed to give special significance to the treating source opinions of Dr. Black." (Rec. Doc. 14 at 7 (emphasis omitted)).  Accordingly, our consideration of the Magistrate Judge's Report focuses on the merits of Plaintiff's Objection.[8]

As indicated above, Plaintiff objects to the Magistrate Judge's failure to accord more deference to Dr. Black's opinion about Plaintiff's limitations, level of disability, and qualification for SSI.  Essentially, Plaintiff argues that "[t]he ALJ

---

[8] In the interest of completeness, we note that upon our review, we see no error in the Magistrate Judge's analyses and conclusions as to the other two (2) issues that Plaintiff raised in this appeal.  In short, with regard to the first issue, we think that the ALJ's questioning of the VE was sufficiently thorough.  Indeed, the ALJ questioned the VE regarding a hypothetical claimant's residual functional capacity in at least two (2) relevant scenarios: with the conditions and restrictions of Plaintiff as the ALJ found them and with the symptomatology as Plaintiff described.  As to the second issue, we find the ALJ's credibility determinations justified because they take into account not only Plaintiff's long work history, but also his own testimony during the hearing.

failed to properly consider the objective medical evidence relied on by the treating physician Dr. Black in prescribing his limitations," that "[t]he sole basis for rejecting Dr. Black's testimony was that in her opinion the Plaintiff had only undergone conservative pain management," and that "the ALJ failed to address Dr. Black's opinion and instead substituted her own judgment . . . ." Id. at 8-9. Thus, Plaintiff contends that the ALJ's substitution of her own opinion for that of the doctor's was without sufficient explanation, amounting to "legal error, warranting reversal." Id. at 10.

In response, the Commissioner notes that the standard of review applicable to review of ALJ decisions is whether substantial evidence supports them, and he asserts that such evidence exists here. (Rec. Doc. 15 at 1). In support of said assertion, the Commissioner argues that several categories of evidence support the ALJ and Magistrate Judge's determination that Dr. Black's conclusions were inconsistent with his own treatment notes and other evidence in the record: 1) the normal objective findings on physical examination; 2) the opinions of non-disability from other medical sources; 3) Plaintiff's activities of daily living, including caring for his three (3) young children; and 4) Plaintiff's own admissions, at the hearing, that he could perform certain jobs. Id. at 2. Finally, the Commissioner asserts that "it is the functional limitations resulting from an

individual's impairments, not the diagnoses, which are dispositive of an individual's disability." Id. (citing In re Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990))).

When considering whether the ALJ afforded appropriate weight to Dr. Black's conclusions as to Plaintiff's level of disability, and, thus, his qualification for SSI, the jurisprudence of the Court of Appeals for the Third Circuit affords significant guidance. Indeed, we recognize that, as the Regulations interpreting the Act require, treating physicians' reports are afforded significant weight and cannot be rejected based upon "speculative inferences from medical reports . . . ." See, e.g., Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (citations and internal quotations omitted). However, as the Third Circuit has reiterated:

> a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue. Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990). The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability. Id.

Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1999). Thus, as the Magistrate Judge aptly indicated, automatic adoption of the opinions of treating physicians is not required. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Put another way, Dr. Black's opinion is not the sine qua non relative to the ultimate issue that

Claimant holds it out it out to be.[9]  It is, in fact, simply one piece of a larger puzzle.

Cognizant that an ALJ may reject the subjective conclusions of a treating physician when they are not adequately supported, we conclude that neither the ALJ nor the Magistrate Judge erred in their rejection of Dr. Black's conclusion that Plaintiff is disabled.  Rather, we find that the ALJ properly found Dr. Black's conclusions as to Plaintiff's level of disability and qualification for SSI to be unjustified based upon the other evidence that was presented to the ALJ, including, inter alia, the results of the Residual Functional Capacity Assessment that was performed by Dr. Gerald Gryczko in July 2004 (TR. 339-47) and the Physical Capacities Evaluation performed by Dr. Black in November 2004 (TR. 348-49). (See also Rec. Doc. 13 at 14-20 (describing additional medical evidence that contradicts Dr. Black's conclusions)).  Based upon all of the evidence presented to her, the ALJ concluded that Plaintiff's residual functional capacity lay somewhere between Dr. Black and Dr. Gryczko's assessments, and we find that  substantial evidence supports said conclusion.

In fact, the ALJ's rejection of Dr. Black's conclusions is also sound in light of Plaintiff's own testimony at the hearing.  See In re Petition of Sullivan, 904 F.2d

---

[9] There is logic to the jurisprudence in this regard.  It is this Court's experience that treating physicians are frequently and appropriately empathetic with respect to their patients' Social Security claims.  However, an ALJ would be derelict in her duty if she did not drill past a subjective opinion and examine the record in its entirety.  That is precisely what took place here.

15

at 845 (noting that functional limitations, and not mere diagnoses, determine whether a claimant is capable of performing substantial gainful activity).  As detailed more extensively above, at the hearing, Plaintiff indicated that he was capable of numerous productive activities, including caring for his three (3) young children while his wife worked.  Conceding that caring for his children, whom he considered "a handful," was "not easy," Plaintiff nevertheless contended that he managed all of the things he had to do for them.  (TR. 449, 451).  Further, Plaintiff also testified that while at home, he prepared the meals for his family and tried "to pick up the house a little bit."  (TR. 453-54).  Finally, Plaintiff admitted that he could perform a job that accommodated his limitations that the ALJ found credible.  (TR. 462-63).

## CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the Report and Recommendation of Magistrate Judge Blewitt are overruled.  We shall adopt the

Report in its entirety and deny Plaintiff's appeal.

An appropriate Order shall issue.